UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     *Plaintiff*,

  *vs.*                           Case No.  17-cr-33-jdp

RAYMOND K. BROWN,

     *Defendant*.

## DEFENDANT'S SENTENCING MEMORANDUM

Raymond K. Brown, by counsel, files this memorandum in support of a 120-month sentence. Anything less wouldn't satisfy sentencing's retribution goal. And his history reveals that a ten-year prison term will deter him from the conduct that landed him in federal court. It also keeps him away from the community until he's aged into a much lower recidivism category. A day more and his sentence becomes vengeful.

## I.     A 10-year prison term is proportionate to Brown's culpability.

Retributive justice is necessarily proportionate justice. "The heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." *Graham v. Florida*, 560 U.S. 48, 72 (2010). Brown's offense conduct did not arise from a wicked, venal impulse to

harm the vulnerable. Proportionality imposes on the Court the distasteful—but imperative—task of separating the appalling from the merely terrible. It must make distinctions that society's barbaric impulse for vengeance would ignore.

The distinction that matters here is that Brown is not a typical enticement offender. Brown may be sexually mature. But he has mild mental retardation and an IQ of 74.[1] To put Brown's diminished capacity in context, it would be a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause to sentence him to death.[2] Indeed, the Supreme Court recently prohibited Louisiana from executing a man with a higher IQ—75—than Brown's.[3]

His cognitive and emotional development are about what one would expect from a 14-year-old, *i.e.*, the age he entered the snake pit of Illinois's Department of Juvenile Justice. After five years the Department released a 19-year-old man with mild mental retardation back into the community with no supervision to make his own choices and fend for himself. Because the Department never addressed his developmental challenges it's unsurprising that he relates better to younger people.[4]

---

[1]    Presentence Report, ¶ 218.
[2]    *See Atkins v. Virginia*, 536 U.S. 304, 318-319 (2002).
[3]    "Brumfield scored 75 on an IQ test and may have scored higher on another test." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015).
[4]    Presentence Report, ¶ 45.

2

## II.   To avoid reversible error, the Court's incapacitation analysis should avoid two pitfalls.

The incapacitation analysis properly begins with the recognition that 10 years is a long time. There are two potential ways the Court might go astray here and contemplate a longer term: the physical abuse allegations and Brown's admitted preference for the company of young people. Neither supports a day beyond 10 years.

Here's why. For starters, adding days based upon the physical abuse allegations in paragraphs 52 through 120 of the Presentence Report would be error because Brown "has a due process right to be sentenced on the basis of accurate information."[5] And "due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations."[6]

The physical abuse allegations in those paragraphs are false. The Court can be certain because if the allegations were true, one or both of the following must be true. For starters, given that none of these allegations has ever resulted in an arrest, let alone a formal charge, one might be tempted to conclude that Brown is an intelligent, sophisticated sexual predator who so skillfully concealed his crimes

---

[5]     *See United States v. Kluball*, 843 F.3d 716, 719 (7th Cir. 2016) (quotation and citation omitted).
[6]     *See id.* (quotation and citation omitted).

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

that he evaded the Rockford Police Department from March 2011 until his arrest in April 2017. The temptation would be misplaced. His intellectual limitations are documented. And the Court has reviewed his interrogation's video recording. The term "guile" doesn't come to mind, *e.g.*, he hadn't put together that his sexual preference for men might entail that he's a homosexual until an FBI agent suggested it.

The other possible explanation, if these sexual abuse allegations were true, is that the Rockford Police Department is indifferent to serial sex offenders. No doubt law enforcement must establish priorities, and it can't catch every felon. But the Court should reject out-of-hand the suggestion that the RPD couldn't be bothered with *any* of these reports on any occasion over a six-year period.

Consider also that Brown made an easy scapegoat for juveniles who had every reason to make up stories rather than admit to crimes and substance abuse themselves. It's hard to imagine an easier target than the gay, retarded man who still lives with his mother. Again, given that none of these alleged incidents even resulted in an arrest, the finger-pointing juveniles were apparently successful in redirecting law enforcement's attention away from them and over to Brown.

It would violate the Due Process Clause for these physical abuse allegations to bear on any aspect of Brown's sentence. It would be even worse if these

4

allegations were the basis for incapacitating him beyond ten years. The Court shouldn't make either mistake.

The second potential pitfall is the Presentence Report's reference to Brown's admission during the interrogation about the company he keeps. "The defendant said he likes to 'chill' with younger people because they were not worried about their job or family obligations."[7] From the mouth of another offender, the remark might be haunting. From Brown's, it wasn't. His response wasn't a panicked explanation to hide his criminal intent. Instead, he sincerely expressed himself: adolescents are his social peers. He isn't drawn to them based upon hard-wired, deviant sexual urges. He relates to them.

### III.   A 10-year sentence provides specific deterrence because prison time has dramatically changed Brown's conduct before.

However much Brown relates to adolescents, he can't spend time with them anymore. Brown's criminal history and cognitive limitations combine to show that a 10-year sentence will teach him that lesson.

Typically, there's a tradeoff between intellectual disabilities and specific deterrence: reduced agency mitigates the retribution goal but aggravates the

---

[7]     *See* PSR, ¶ 45.

5

specific deterrence goal. The tradeoff doesn't obtain here. Since his release from prison in 2011, he hasn't returned to the gang feuds, guns, and violence from his past. Instead, his run-ins with the law include three indigency crimes: driving with a suspended license; driving without insurance; and selling a gram-bag of heroin. The remaining run-in was a disorderly conduct. As an objective matter, this post-release conduct isn't dazzling. But relative to his pre-incarceration trajectory, his conduct since 2011 is dazzling. Coupled with his work ethic, Brown's positive changes are profound.[8] He's shown that he can make dramatic changes after release from prison.

To respond that Brown continues to commit crimes is misleading because it suggests that his pre-2011 conduct and his offense conduct here are of a piece. Not so. Sure, both sets of conduct are criminal. But the similarities end there. He had to learn the hard way that gang life was a dead end. It took somewhere between three and four years in prison in his late 20's, but he learned that lesson. This time he'll have to serve a sentence about three times as long, *i.e.*, 10 years' incarceration.

---

[8]     *See* PSR, ¶ 237-243. Also attached as Exhibit A is a defense investigator's memorandum, which includes written employment verifications for Steak 'N' Shake and Culver's. Brown worked at Culver's in Rockford from December 2013 to December 2014. He worked at Little Caesar's on Cranston Road in Beloit from January 2015 to February 2016. His time at Steak 'N' Shake ran from February 2015 until April 2016.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

That's more than enough time to teach him to engage in age-appropriate sexual relationships.

Dated at Madison, Wisconsin, this 19th day of December, 2017.

Respectfully submitted,

**/s/ Peter R. Moyers**
Peter R. Moyers
Counsel for Mr. Brown

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
peter_moyers@fd.org